REQUESTED BY: Allen J. Beermann, Nebraska Secretary of State; Art Thomsen, Executive Secretary and Chief Inspector, Nebraska Brand Committee.
I. Once a shipper or seller has consigned cattle for sale at a designated brand inspection area, and after the required brand inspection has been performed, can the consignor remove such cattle prior to the actual sale without first establishing ownership to such cattle?
II. Does the Nebraska Brand Committee have the authority to impound (or hold) any cattle when ownership to said cattle is questionable?
III. Once a brand inspector places an official `hold notice' on a consignment, or portion thereof, and the consignor removes the animals in question without providing satisfactory evidence of ownership, can the auction market or selling agent be required to pay an amount of money to the Nebraska Brand Committee equal to the amount of the approximate value of the animals removed by the consignor?
IV. Does the auction market, sales barn, or selling agent have a responsibility in making certain no cattle are removed from the brand inspection area after said cattle have been officially consigned, and in the event the consignor has not proven ownership?
I. No. The cattle cannot be moved from any point within the brand area to any point outside the brand area unless and until said cattle have been inspected by the Nebraska Brand Committee, and have received a certificate of brand inspection.
II. Yes. The Committee is authorized to hold such animals and segregate them apart from other cattle located within the brand area. Such animals may be sold, and the committee is authorized to order the proceeds of such a sale to be held until such time as ownership of the animal is established.
III. No. The exclusive remedy provided by statute when such cattle are improperly removed from a brand inspection area is set out at Section 54-143.01, R.R.S. 1943.
IV. Yes. Such a responsibility is implied by Section54-143, R.S.Supp., 1976, and Section 54-152, 1977 Supp.
In your letter of January 4, 1978, the questions set out above were presented to us in the following factual context.
In December, 1977, eight cows were consigned for sale at the Alma sale barn. A brand inspection of said cattle revealed that six of these cows carried a brand recorded to the consignor. However, two of the cows carried a brand recorded to a different individual in addition to the consignor's recorded brand.
Upon this discovery, the brand inspector completed `notice to hold proceeds form,' which notice instructed the consignor's selling agent, the Alma sale barn, to hold the proceeds on the sale of the two cows bearing two separate brands.
After receiving word of this `hold notice,' the consignor attempted to get said hold released. The brand inspector advised the consignor that before this hold could be released, the consignor would have to establish his ownership of the two cows in question by exhibiting to the brand inspector some satisfactory evidence of ownership of the cattle. No such evidence of ownership was produced by the consignor, who advised the brand inspector that if the proceeds would not be released, the consignor would take the cows home. The brand inspector advised the consignor that title to the cows must be established before the cows could be removed from the inspection area. The inspector also contacted the owner of the second brand which appeared on the two cows in question. The owner of the second brand advised the inspector that the would not sign any release, or attest to any sale of the two cows in question.
The two cows in question were separately penned in the sales barn and inspection area, and the gate to the pen was secured and locked by the state brand inspector. Subsequently, the original consignor lifted the lock gate off its hinges, drove out the two cows in question, loaded the cows on his truck, and took them home. The consignor had been given a check in payment for the six cows which were properly branded and sold that day.
One of the questions you have asked is whether the Brand Committee would be authorized to hold part of the proceeds from the sale of the six cows which were properly branded until such time as the consignor agreed to either return or establish ownership of the two cows in question. It is our opinion that the Brand Committee is not authorized to hold such proceeds under the facts of this particular situation. The reasons for our conclusion are discussed below.
 I.
Your first two questions address the authority of the Nebraska Brand Committee to hold cattle, after the cattle have entered the brand inspection area, until the brands have been inspected and the ownership to the cattle has been established, and a certificate of brand inspection has been issued. For purposes of this opinion, we note that the Alma sales barn, located in Harlan County, Nebraska, is within the Nebraska brand inspection area as defined by Section54-134, 1977 Supp.
Section 54-143, R.S.Supp., 1976, provides, in pertinent part, that no owner, seller, or shipper:
 ". . . shall move, drive, ship or transport, in any manner, any cattle from any point within
the brand area to any point outside the brand area, unless such cattle shall first have a brand inspection by the Nebraska Brand Committee, and a certificate of brand inspection issued." (Emphasis added.)
The clear import of this section of the law, when read together with the succeeding enforcement sections, is to assure that all cattle moving in the Nebraska market place are properly branded and free from any dispute as to ownership. In our opinion, therefore, once the shipper or seller has consigned the cattle for sale at an auction market, and the cattle have entered the brand inspection area, neither the consignor or any other person should remove said cattle from the inspection area until a proper certificate of brand inspection has been issued by the Nebraska Brand Committee.
 II.
The statutory mandate that cattle should not be removed from a brand inspection area until such time as a proper certificate of inspection has been issued implies that the Nebraska Brand Committee has the authority to hold any cattle within the inspection area until proper ownership has been ascertained. This reasoning is further supported by Section 54-143.02, R.R.S. 1943, which provides, in part, as follows:
 "No consignment of livestock within, entering into, or passing through the brand area of Nebraska, after having been inspected . . ., shall be permitted to intermingle with any other cattle located within the brand area of Nebraska. If at any time after brand inspection has been performed . . . and the cattle become intermingled with other livestock inspection shall become void and before further movement of the cattle out of the brand area may be made, reinspection for identification of brands shall be required to be performed by the Nebraska brand inspector." (Emphasis added.)
Our review of the pertinent statutes reveals that when the ownership and the brand of the cattle are in question, the cattle should not be removed out of the brand inspection area unless the cattle are sold pursuant to Section 54-148, R.R.S. 1943, which section authorizes the Nebraska Brand Committee to cause the proceeds of such a sale to be held until ownership of the cattle in question is firmly established.
We therefore conclude that the Nebraska Brand Committee has the statutory authority to hold any cattle within the designated brand inspection area when the ownership to said cattle is at issue.
 III.
You have also asked whether the seller or the seller's agent may be required to pay an amount of money to the Nebraska Brand Committee equal to the approximate value of any livestock improperly removed from the brand inspection area by the seller or consignor. In our opinion, the statutes in question do not authorize the Nebraska Brand Committee to require such a payment.
The only provisions of the law which allow the Nebraska Brand Committee to hold any proceeds from the sale of livestock are set out at Section 54-148 and Section 54-150, R.R.S. 1943. These provisions allow for the holding of proceeds from the sale of the actual livestock subject to disputed ownership claims. We have found no provisions which would allow the Brand Committee to hold any other proceeds from livestock sales.
The statutory remedy, applicable to a situation where a person improperly removes cattle from a brand inspection area, is set out at Section 54-143.01, R.R.S. 1943, which provides for the arrest, and the notice of hearing which should be given to anyone violating the provisions of the statutes applicable to brand inspection. See also, Section54-145.06, R.R.S. 1943, and Section 54-152, 1977 Supp.
The brand inspection laws cited above impose certain requirements which have an effect on the property rights of cattle owners. Such statutes, and the remedies they provide, must be strictly construed. Strauel v. Peterson,155 Neb. 448, 52 N.W.2d 307 (1952); State v. Fox, 177 Neb. 238,128 N.W.2d 576 (1964). In light of these rules of construction, we do not believe the Nebraska Brand Committee is authorized to require the consignor or his selling agent to pay an amount of money equal to the value of the animals which were removed. Rather, the Committee may utilize only the remedies clearly defined by statute.
 IV.
Finally, you have asked whether the selling agent, the auction market or the sales barn, has a responsibility to make certain that no cattle are removed from the premises until the consignor has clearly established ownership. The mandate set out at Section 54-143, R.S.Supp., 1976 that no person shall move any cattle from within the brand area to any point without the brand area until said cattle have been properly inspected and certified applies to both the seller and his agent, the livestock market or the sales barn. This mandate, read together with the enforcement provisions discussed above, supports a conclusion that the auction market or sales barn has a responsibility to guard against improper removal of cattle from the brand inspection area. We would hasten to add, however, that the enforcement provisions discussed above, and set out at Section 54-143.01, R.R.S. 1943, must be carried out by the Nebraska Brand Committee and their brand inspectors. The Brand Committee cannot abdicate its responsibility to enforce the brand inspection laws.
We trust that this discussion answers the questions raised in your letter of January 4, 1978, and invite you to contact the undersigned attorney if you have further questions.